1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT FOR THE

7                          EASTERN DISTRICT OF CALIFORNIA

8

9  LION RAISINS, INC.,              )      No. CV-F-05-0062 REC SMS
                                    )
10             Plaintiff,           )      ORDER DENYING PLAINTIFF'S
                                    )      MOTION FOR SUMMARY
11        vs.                       )      JUDGMENT, GRANTING
                                    )      DEFENDANT'S MOTION FOR
12  UNITED STATES DEPARTMENT OF     )      SUMMARY JUDGMENT, AND
    AGRICULTURE,                    )      DIRECTING CLERK TO ENTER
13                                  )      JUDGMENT FOR DEFENDANT.
               Defendant.           )
14                                  )      (Docs. 18, 23)
    _____ )

15

16

17

18

19        On September 26, 2005, the Court heard Plaintiff's and

20  Defendant's cross motions for summary judgment.  Upon due

21  consideration of the written and oral arguments of the parties

22  and the record herein, the Court GRANTS Defendant's motion and

23  DENIES Plaintiff's motion as set forth below.

    **I.  Factual Background**

24        This case concerns Freedom of Information Act requests by

25  Lion Raisins ("Lion") that the United States Department of

26

                                    1

1  Agriculture ("USDA") denied, citing ongoing administrative

2  proceedings against Lion.  Lion and USDA have been involved in

3  administrative proceedings since 1998, when the Agricultural

4  Marketing Service (hereinafter referred to as "AMS") initiated an

5  investigation of Lion.  The proceedings stem from USDA's

6  allegations that representatives of Lion forged signatures of

7  USDA inspectors or recorded false moisture readings on inspection

8  certificates.  USDA alleges that Bruce Lion, an officer and

9  director of Lion Raisins, instituted a procedure for falsifying

10 or fabricating USDA certificates to conform to customer

11 specifications.  The fabricated certificates, USDA alleges, were

12 then sent to foreign customers.

13     On January 12, 2001, USDA suspended Lion's eligibility for

14 government contracts and filed an administrative complaint (I&G

15 Docket Number 01-0001) that sought to "debar" future inspections

16 of Lion's facilities.  As of August 10, 2005, ten weeks of

17 hearings had been held in that case, and USDA had finished

18 presenting its case in chief.  More hearings are scheduled.  Two

19 additional administrative complaints (I&G Docket Numbers 03-0001

20 and 04-0001) have issued against Lion.

21     Lion is the largest independent handler of raisins produced

22 in California.  It handles and packs raisins produced by outside

23 growers and by Lion and its affiliates.  Lion is governed by the

24 Agricultural Marketing Act of 1937 (7 U.S.C. §§ 601-627) and a

25 "marketing order" promulgated thereunder that governs raisins

26 produced from grapes grown in California (7 C.F.R. §§ 989.1-

989.801).  The marketing order calls for an inspection process whereby a handler must have USDA inspect its products once when they are received from the producer and again before they are sold to the producer.  7 C.F.R. §§ 989.58-989.59.  The AMS is charged with the administration of the inspection regulations and provides inspection and grading services to applicants.  The inspections entail USDA inspectors periodically taking samples from handlers' processing lines to assess the quality of the raisins in various categories, such as weight, color, size, sugar content, and moisture.

The inspection process generates a variety of paperwork.  A USDA inspector completes a "Line Check Sheet" based on his or her observations and assigns grades to the raisins.  The inspector then prepares a Certificate of Quality and Condition for Raisins Worksheet ("Worksheet") that serves as a draft for the official Certificate of Quality and Condition ("Official Certificate"), also known as form FV-146, and gives the Worksheet to an employee of the packer.  At Lion the Worksheet was given to a shipping department employee.  The employee's task was to type the Official Certificate based on the information on the Worksheet. The employee next returned the Official Certificate and Worksheet to the USDA grader.  If the grader reviewed the Official Certificate and determined that it had been correctly prepared, the grader would sign it and return only the original and up to four carbon copies of the Official Certificate to Lion.  USDA did not return the Worksheets to Lion. From time to time, USDA

3

1  officials inspecting Lion's raisins would void an Official

2  Certificate and have a new one typed up.  USDA then provided a

3  copy of the new Official Certificate to Lion.  USDA retained the

4  voided Official Certificate ("Voided Certificate") and did not at

5  that time provide a copy to Lion.

6       On May 13, 2004, Maralee Berling sent a letter to USDA

7  requesting under FOIA "any and all Void or Voided USDA

8  Certificates, also known as USDA form FV-146 prepared for Lion

9  Raisins, Inc., or Lion Enterprises, Inc." for the period

10 "beginning January 1995 to December 2000."  Trykowski Decl. Ex.

11 A.  USDA's FOIA Officer Zipora D. Bullard refused Lion's request

12 in a letter of June 23, 2004, on the grounds that the documents

13 were being withheld pursuant to 5 U.S.C. § 552(b)(7)(A) as

14 evidence in USDA's ongoing investigation of Lion.  Trykowski

15 Decl. Ex. B.  Lion appealed that decision.  Trykowski Decl. Ex.

16 C.  By letter dated February 14, 2005, the AMS Acting

17 Administrator, Kenneth C. Clayton, responded to Lion's appeal by

18 reversing Ms. Bullard's initial denial and agreed to release the

19 requested documents.  Trykowski Decl. Ex. D.  On February 14,

20 2005, USDA produced 534 documents "representing the USDA

21 Certificates of Quality and Condition (form FV-146) which were

22 voided by USDA personnel at Lion Raisins, Inc. between August 1,

23 1995 and December 31, 2000."  Trykowski Decl. ¶ 12.  Lion has not

24 disputed USDA's contention that USDA has satisfied Lion's

25 request.

26       In a letter dated May 13, 2004, Lion then requested, under

4

1  FOIA, any and all USDA Certificate of Quality and Condition for

2  Raisins Worksheets issued or prepared by USDA for product

3  inspected at Lion during the period of January 1995 to December

4  2000.  Trykowski Decl. Ex. E.  By letter dated June 23, 2004, Ms.

5  Bullard again responded to Lion's request by withholding the

6  requested documents pursuant to 5 U.S.C. § 552(b)(7)(A).

7  Trykowski Decl. Ex. F.  In its letter dated July 12, 2004, Lion

8  again appealed.  Trykowski Decl. Ex. G.  By letter dated January

9  3, 2005, Mr. Clayton responded to Lion's appeal by upholding Ms.

10  Bullard's initial refusal to release the requested documents.

11  Trykowski Decl. Ex. H at 1.

12  **II.  Procedural History**

13       Lion filed the instant complaint in federal court on January

14  11, 2005.  Lion alleges that FOIA, 5 U.S.C. § 552, requires USDA

15  to provide the Voided Certificates and Worksheets that it

16  requested for the period from January 1995 to December 2000.

17  Lion seeks a declaratory judgment that USDA improperly refused to

18  provide the documents, an injunction that requires USDA to

19  produce the documents, and attorney fees and costs.

20       USDA filed a motion for summary judgment on August 10, 2005.

21  Lion filed a motion for summary judgment on August 11, 2005.

22  **III.  Discussion**

23       **A.  Legal Standard**

24       Summary judgment is proper when it is shown that there

25  exists "no genuine issue as to any material fact and that the

26  moving party is entitled to judgment as a matter of law."  Fed.

5

R. Civ. P. 56.  A fact is "material" if it is relevant to an element of a claim or a defense, the existence of which may affect the outcome of the suit.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)). Materiality is determined by the substantive law governing a claim or a defense.  Id.  The evidence and all inferences drawn from it must be construed in the light most favorable to the nonmoving party.  Id.

The initial burden in a motion for summary judgment is on the moving party.  The moving party satisfies this initial burden by identifying the parts of the materials on file it believes demonstrate an "absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).  The burden then shifts to the nonmoving party to defeat summary judgment.  T.W. Elec., 809 F.2d at 630.  Where a court decides cross motions for summary judgment, neither party is entitled to summary judgment if a genuine issue exists as to any material fact.  United States v. Fred A. Arnold, Inc., 573 F.2d 605, 606 (9th Cir. 1978)(citing Fed. R. Civ. P. 56(c)).

The nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment," but must set forth by affidavit or other appropriate evidence "specific facts showing there is a genuine issue for trial."  T.W. Elec.,

6

809 F.2d at 630 (citing Fed. R. Civ. P. 56(e)).  The nonmoving

party may not simply state that it will discredit the moving

party's evidence at trial; it must produce at least some

"significant probative evidence tending to support the

complaint."  Id. (citing First Nat'l Bank v. Cities Serv. Co.,

391 U.S. 253, 290, 20 L. Ed. 2d 569, 88 S. Ct. 1575 (1968)).

A district court may grant summary judgment in FOIA cases

"solely on the basis of government affidavits describing the

documents sought."  Lion Raisins, Inc. v. USDA (Lion I), 354 F.3d

1072, 1092 (9th Cir. 2004).  Despite the agency's burden in such

cases, a district court can grant summary judgment in the

agency's favor where accurate affidavits given in good faith

adequately state the grounds for nondisclosure:

> The federal courts and federal judges are
> ill-suited to assume the role of
> super-administrator in FOIA cases.  A court's
> primary role, therefore, is to review the
> adequacy of the affidavits and other evidence
> presented by the Government in support of its
> position, utilizing an *in camera* examination
> of the manual itself as an aid in determining
> whether the Government's affidavits are
> accurate and made in good faith.  If the
> Government fairly describes the content of
> the material withheld and adequately states
> its grounds for nondisclosure, and if those
> grounds are reasonable and consistent with
> the applicable law, the district court should
> uphold the Government's position.  The court
> is entitled to accept the credibility of the
> affidavits, so long as it has no reason to
> question the good faith of the agency.  See
> Weissman v. CIA, [565 F.2d 692, 698 (D.C.
> Cir. 1977)].  If, on the other hand, the
> agency is unable adequately to support its
> decision to withhold portions of the manual,

the court must release that material.[1]

Cox v. United States Dep't of Justice, 576 F.2d 1302, 1312 (8th Cir. 1978).  "In evaluating a claim for exemption, a district court must accord 'substantial weight' to [agency] affidavits, provided the justifications for nondisclosure 'are not controverted by contrary evidence in the record or by evidence of [agency] bad faith.'"  Minier v. CIA, 88 F.3d 796, 800 (9th Cir. 1996).

## B.  USDA's Motion for Summary Judgment

FOIA generally requires government agencies to fully disclose to the public information they possess.  5 U.S.C. § 552(a)(3)(A); see Dep't of the Air Force v. Rose, 425 U.S. 352, 360-61, 48 L. Ed. 2d 11, 96 S. Ct. 1592 (1976).  FOIA evinces "'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.'"  Id. Courts narrowly construe the exclusive exceptions to compelled disclosure set forth in 5 U.S.C. § 552(b).  Rose, 425 U.S. at 361.  The burden is on the agency to sustain its action.  5 U.S.C. § 552(a)(4)(B).

Under the law enforcement exemption, 5 U.S.C.

---

[1]Ordinarily, the government agency must compile a detailed index that categorizes the documents withheld.  See Lion I, 354 F.3d at 1082 (citing Vaughn v. Rosen, 484 F.2d 820, 823-23 (D.C. Cir. 1973)).  The court also has discretion to review the requested documents in camera to determine whether the agency's claims of interference are warranted.  See Lewis v. IRS, 823 F.2d 375, 378 (9th Cir. 1987).  Neither party has requested that the Court require an index of the withheld documents or review them in camera, so the Court declines to do so.

§ 552(b)(7)(A), an agency need not disclose "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings . . . ."  Therefore, exemption 7(A) does not apply unless both of two elements are met: (1) the matter must be "records or information compiled for law enforcement purposes," and (2) its release must "reasonably be expected to interfere with enforcement proceedings."

### 1.  Voided Certificates

Lion's complaint seeks declaratory and injunctive relief requiring USDA to provide all Voided Certificates that USDA retained concerning inspections from January 1995 to December 2000.  USDA claims that it has responded to Lion's request by producing 543 documents representing Voided Certificates for the period August 1, 1995, to December 31, 2000.  Def.'s Statement of Undisputed Material Facts ("UMF") No. 12.  Lion does not dispute this contention.  See Pl.'s Opp'n to UMF.  The Court accordingly accepts this contention as true.  See Mendelsohn v. Capital Underwriters, Inc., 490 F. Supp. 1069, 1081 (N.D. Cal. 1979) ("[U]ndisputed statements contained in the moving party's affidavits are taken as true." (citing Mut. Fund Investors, Inc. v. Putnam Mgmt. Co., 553 F.2d 620, 624 (9th Cir. 1977))).

USDA has complied with Lion's FOIA request for Voided Certificates.  Accordingly, summary judgment in favor of USDA as to this issue is GRANTED.

1          **2.   Worksheets**

2             **a.   Law Enforcement Purposes**

3      USDA must first establish that the Worksheets are being

4  withheld for law enforcement purposes.  This purpose can be shown

5  by affidavits that "establish a rational nexus between

6  enforcement of a federal law and the documents for which the

7  exemption is claimed."  <u>Lewis v. IRS</u>, 823 F.2d 375, 379 (9th Cir.

8  1987).  Lion concedes for the purposes of its summary judgment

9  motion "that the Worksheets are records compiled for law

10 enforcement purposes."  Pl.'s Mot. at 7.  This concession meets

11 USDA's burden to show that the Worksheets satisfy the first

12 requirement of exemption 7(A).

13             **b.   Interference with Enforcement Proceedings**

14     This motion turns on the issue of whether USDA has met its

15 burden to show that disclosure of the Worksheets can "reasonably

16 be expected to interfere with enforcement proceedings."  The

17 Supreme Court has held that providing earlier access to the

18 government's case can constitute interference with an enforcement

19 proceeding:

20             In short, prehearing disclosure of witnesses'
             statements would involve the kind of harm
21             that Congress believed would constitute an
             "interference" with NLRB enforcement
22             proceedings: that of giving a party litigant
             earlier and greater access to the Board's
23             case than he would otherwise have.  As the
             lower courts have noted, even without
24             intimidation or harassment a suspected
             violator with advance access to the Board's
25             case could "'construct defenses which would
             permit violations to go unremedied.'"

26

NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 241-43, 57 L. Ed. 2d 159, 98 S. Ct. 2311 (1978). The Court applied exemption 7(A) based on its "reluctance to override a long tradition of agency discovery." Id. at 239. The Court further noted that "FOIA was not intended to function as a private discovery tool." Id. at 242.

Lion contends, citing Miller v. USDA, 13 F.3d 260, 263 (8th Cir. 1993), that USDA can only prevail if it introduces "specific facts" that "show the distinct harm that could result from disclosure." Pl.'s Mot. at 3. Lion misreads Miller. Miller makes no mention of "distinct harm" or "specific facts." See Miller, 13 F.3d at 263. In that case, the court merely held that the agency was required to make a "more specific showing" than the boilerplate, conclusory affidavits it had filed. Id. All that is required of the agency is a "general showing that disclosure of its investigatory records would interfere with its enforcement proceedings." Lewis, 823 F.2d at 380 (citing Robbins Tire & Rubber Co., 437 U.S. at 224-25). The Supreme Court, after reviewing FOIA's legislative history, refused to require a detailed, particularized showing, concluding "that Congress did not intend to prevent the federal courts from determining that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'" Robbins Tire & Rubber Co., 437 U.S. at 236. The Ninth Circuit requires that refusal to disclose shall not be

11

1   predicated on "speculative and farfetched" law enforcement

2   concerns.   <u>Lion I</u>, 354 F.3d at 1085.

3        USDA points out that USDA's civil enforcement proceedings do

4   not allow Lion to conduct full discovery.   Trykowski Decl. ¶ 20;

5   <u>see</u> 7 C.F.R. §§ 1.140-1.141.   USDA contends that Lion is

6   attempting to circumvent the agency discovery rules with this

7   FOIA request.   USDA further claims that Lion has altered

8   "[n]umerous USDA documents found in Lion's shipping files."

9   Trykowski Decl. ¶ 22.   USDA contends that Lion seeks the

10  Worksheets that USDA is withholding because

11              [t]he scope of the fraud committed by Lion is
                on such a wide scale that Lion's own
12              employees lack the ability to recognize
                fraudulent documents in Lion's own files.
13              The only way Lion can possibly identify the
                documents it falsified is to obtain every
14              document on file with the USDA that pertains
                to inspections of raisins conducted at Lion
15              for the period of 1995 to 2000.   (Trykowski
                Decl., ¶22).
16
    Def.'s Mot. at 7.
17
         On June 24, 2002, Lion introduced at the administrative
18
    hearing a copy of a purported Official Certificate from its own
19
    shipping files during its cross examination of a USDA grader.
20
    Trykowski Decl. ¶ 23.   David Trykowski, Chief of Investigations
21
    for the Compliance Office of the AMS, recognized that the
22
    document had been falsified but was not yet part of the
23
    government's evidence in the case.   Trykowski Decl. ¶ 23.
24
    As a result, USDA subsequently amended its administrative
25
    complaint to allege that Lion had committed additional
26

                                  12

1 violations.  Trykowski Decl. ¶ 23.

2       USDA further alleges that disclosing the Worksheets
3 would allow Lion to create exculpatory evidence.  USDA points to
4 a its formal allegations that Lion has "long history of creating
5 documentary 'evidence' to support its position."  Trykowski Decl.
6 ¶ 24.  The Trykowski declaration indicates that "[t]he
7 administrative hearing record is replete with evidence supporting
8 those allegations."  Trykowski Decl. ¶ 24.  Mr. Trykowski also
9 believes that Lion fabricated "minutes of board of directors'
10 meetings" attached to its reply brief in the first administrative
11 proceeding to support its case.  Trykowski Decl. ¶ 25.  Lion
12 could use the Worksheets, Mr. Trykowski states, "as templates for
13 the fabrication of 'exculpatory documents.'"  Trykowski Decl.
14 ¶ 26.

15     Lion argues generally that USDA's written responses to its
16 FOIA requests do not sufficiently specify the harm that could
17 result from disclosure.  Lion errs to the extent that it urges
18 the Court to limit its decision about whether a FOIA exemption
19 applies to the reasons given in USDA's initial denial letters.
20 Lion cites no authority so limiting the Court's inquiry.  In
21 fact, courts may decide a motion for summary judgment on a FOIA
22 claim based on agency affidavits specifying why the documents
23 requested meet a FOIA exemption.  Lion I, 354 F.3d at 1082.  A
24 district court makes this determination de novo.  Robbins Tire &
25 Rubber Co., 437 U.S. at 235.

26     Lion argues that the Worksheets cannot reasonably be

expected to interfere with any enforcement proceeding because 1) the Worksheets are identical to materials Lion already possesses, 2) there is no risk that Lion will use the Worksheets to fabricate evidence, and 3) Lion is already familiar with USDA's litigation strategy.

Lion asserts that disclosure of the Worksheets could not possibly interfere with the enforcement proceedings because Lion already has access to all of the information that the Worksheets contain in the form of other documents.  In Lion I, the Ninth Circuit held that the law enforcement exemption did not apply to copies of Line Check Sheets that USDA withheld.  354 F.3d at 1085.  The court held that USDA had no reason to retain the original Line Check Sheets because they were "identical" to the copies it left with Lion.  Id.  Copies of material that Lion already possessed could not possibly "allow Lion premature access to the evidence upon which it intends to rely at trial."  Id.

Here, the Worksheets are not identical to the Official Certificates or to any other document that Lion has possessed. USDA's practice was to collect the Worksheets after it processed the Official Certificates and not leave a copy of the Worksheets with Lion.  Trykowski Decl. ¶ 16.  Lion claims that USDA has conceded that the Worksheets are "'draft' USDA Certificates" identical to the Line Check Sheets that Lion already has.[2]  Pl.'s

_____

[2]Lion further claims that if the Worksheets contain identical information to the Line Check Sheets, then they must contain exculpatory evidence or USDA would have released them already. Pl.'s Mot. at 8.  This claim is fallacious.  Mr. Trykowski denies

14

Mot. at 8.  Though USDA has claimed that the Line Check Sheets are required to be accurately transferred to the Worksheets, no materials it has filed before the Court appear to concede that the two documents are effectively copies of one another.  Even though the Line Check Sheets may generally contain similar information to the Worksheets from which they were created, they do not amount to two copies of the same document.  In fact, both parties acknowledge that the outcome of the administrative proceedings may depend on a determination of how faithfully the Line Check Sheets correspond to the Worksheets and to the resulting Official Certificate.  Trykowski Decl. ¶ 17; Pl.'s UMF No. 13.  Consequently, this case is distinguishable from <u>Lion I</u> because it appears that Lion's only means of obtaining copies of the Worksheets before the end of the administrative proceedings is this FOIA request.

In response to USDA's claims about fabrication, Lion objects that any attempt to alter the Worksheets would be futile because USDA already possesses the entire universe of Worksheets prepared for Lion.  Lion also contends that the Worksheets that USDA claims Lion fabricated may have resulted from negligent or

---

that any of the withheld materials are exculpatory.  Trykowski Decl. ¶¶ 15, 21-22.  USDA could withhold this information for various reasons, such as to prevent premature disclosure of its case or to prevent Lion from learning which of Lion's own documents are fraudulent.  In any event, the usefulness of the information for Lion's defense is irrelevant, so long as the law enforcement exemption is met.  FOIA is not a tool for second-guessing agency discovery practice.  <u>See</u> <u>Robbins Tire & Rubber Co.</u>, 437 U.S. at 239.

intentional acts of USDA inspectors.  One USDA inspector, Jennifer Brower, has acknowledged that during the inspection process it was not uncommon that she "whited out" an incorrect grade on a Worksheet and wrote in the correct grade, rather than typing out a new Worksheet on a computer.  McBrearty Decl. Ex. 6 at 3.  Lion questions the trustworthiness of the Worksheets by pointing out that USDA failed to sign all of the Worksheets USDA introduced at the administrative hearing.  Pl.'s UMF No. 15. Lion claims that the lack of a signature makes the Worksheets "potentially fraudulent."  Pl.'s Mot. at 5.  Lion argued at oral argument that the Worksheets are necessary to counter USDA's assertions that an "absence of entry" in certain records is evidence of Lion's misconduct.  Lion contends that the Worksheets will show that the absences actually result from USDA's willful or negligent conduct.

Lion's assertions that it cannot be "reasonably expected" that Lion will fraudulently alter the copies of the Worksheets or use them as a template for fabrication if they are disclosed are persuasive.  USDA has only made conclusory secondhand averments to this effect that derive from the yet unfinished administrative hearings on the subject.  See Trykowski Decl. ¶¶ 15-17, 22, 24. The Court agrees that it is unlikely that Lion will now try to extricate itself from these accusations of fraudulent fabrication by fabricating more documents directly under the nose of USDA. Thus, USDA has not shown that the likelihood of fabrication, taken alone, makes it such that we can reasonably expect the

16

1  Worksheets to interfere with the administrative proceedings.

2      To rebut USDA's claims that disclosing the Worksheets would

3  reveal its litigation strategy, Lion points out that the

4  Worksheets were prepared long before the administrative

5  proceedings began and so cannot reveal anything about USDA's

6  strategy in later proceedings.  USDA has completed its case in

7  chief in the first of three administrative actions, which means

8  that any litigation strategy has already been revealed, according

9  to Lion.  Lion also asserts that future debarment proceedings

10  will be similar to the first.  Pl.'s Mot. at 8.  Lion argued for

11  the first time at oral argument that, based on its knowledge of

12  the Official Certificates, it already is aware of the contents of

13  the Worksheets.

14      Lion persuasively argues that it already knows a great deal

15  about USDA's litigation strategy.  USDA has already presented its

16  case in the first proceeding.  Neither party has informed the

17  Court about the nature of the other pending administrative

18  hearings, except that the second concerns "additional violations

19  of the AMA and the inspection and certification regulations" and

20  the third addresses "further violations of the AMA and the

21  inspection and certification regulations."  Trykowski Decl. ¶ 14.

22  Thus, for the purpose of deciding USDA's motion we will view the

23  evidence in the light most favorable to Lion and presume that

24  USDA's case in the forthcoming proceedings will be similar to the

25  first.  See Matsushita, 475 U.S. 574.

26      Even if the upcoming proceedings are similar, however,

17

1   Lion's greater access to the evidence against it may still

2   interfere with them.  Lion is likely to be better able to present

3   its defense knowing what evidence USDA has available for rebuttal

4   and cross examination.  USDA's claim that Lion will be able to

5   present a more effective defense using the documents is

6   convincing.  Lion's introduction, on June 24, 2002, of a

7   falsified Official Certificate during cross examination lends

8   credence to USDA's claim that, if Lion has fabricated documents,

9   it currently lacks information about its past fabrication.  This

10  incident also belies Lion's assertion that its knowledge of

11  Official Certificates provides all the information it needs to

12  determine what information other inspection-related documents

13  ought to contain.  Disclosure of the Worksheets would provide the

14  "earlier and greater access" that constitutes an interference

15  with enforcement proceedings.  Robbins Tire & Rubber Co., 437

16  U.S. at 241; see also Mapother v. Dep't of Justice, 3 F.3d 1533,

17  1542 (D.C. Cir. 1993) (holding that a document met exemption 7(A)

18  where the agency alleged that disclosure "'would allow possible

19  fabrication of alibis and/or other exculpatory evidence, contact

20  with potential witnesses, and would allow the identification of

21  any weaknesses in the government's evidence that may be unfairly

22  exploited by Waldheim.'")

23       Lion has not given the Court a satisfactory basis to

24  disregard Mr. Trykowski's statement about the falsified Official

25  Certificate it introduced.  In its briefs, Lion made boilerplate

26  objections to other portions of Mr. Trykowski's affidavit on the

18

grounds that they were unreliable expert opinion under Federal
Rule of Evidence 702.  See, e.g., Pl.'s Objs. to Evidence No. 1.
In fact, Lion applies that objection to each one of its
evidentiary objections *except* for the objection that applies to
the introduction of the fabricated Official Certificate, which it
objects to only on relevance grounds.  Pl.'s Objs. to Evidence
No. 7.  Lion objected for the first time at oral argument that
Mr. Trykowski's affidavit is conclusory and lacks a factual
basis.

     Lion is correct that Mr. Trykowski gives no specific facts
underlying his opinion that the Official Certificate had been
fabricated.  See Trykowski Decl. ¶ 23.  Expert opinions need not,
however, disclose the factual foundation on which they are based.
See Mid-State Fertilizer Co. v. Exch. Nat'l Bank, 877 F.2d 1333,
1339 (7th Cir. 1989) ("Rule 705 of the Federal Rules of Evidence
allows experts to present naked opinions.").  Lion provides no
reason to doubt Mr. Trykowski's opinion about the document's
authenticity.  Nor did Lion give any reason to doubt Mr.
Trykowski's expertise as an investigator or his ability to
identify falsified documents.[3]

     In any event, Lion does not dispute Mr. Trykowski's opinion
that the document it introduced at the proceedings was fabricated
and makes no effort to explain its origin.  Consequently, the

_____

     [3] Mr. Trykowski has worked since 1995 in an investigative
capacity with AMS and has over thirty years total investigative
experience.  Trykowski Decl. ¶ 1.

19

Court will deem that statement admitted.   See Mendelsohn, 490 F. Supp. at 1081.

Lion's introduction of a falsified document, the origin of which it cannot explain, combined with USDA's ongoing administrative proceedings, establishes that in this kind of enforcement proceeding, this kind of evidence would "generally 'interfere with enforcement proceedings.'"   See Robbins Tire & Rubber Co., 437 U.S. at 236.   While USDA has not proven as a matter of law that Lion has fabricated or even is likely to fabricate any documents if the Worksheets are disclosed, it need not make any such a showing.   USDA need not prove its entire case against Lion in order to withhold the Worksheets.   All it must do is show the existence of a law enforcement proceeding and that the withheld documents "could reasonably be expected to interfere" with that proceeding.   Lion I, 354 F.3d at 1072.

USDA's concern about expected interference with enforcement is not merely "a speculative and farfetched concern."   See Lion I, 354 F.3d at 1085.   It is uncontroverted that Lion introduced a fabricated Official Certificate that triggered additional administrative complaints.   Lion has failed to advance an innocent explanation for the introduction of the document.   Lion has also failed respond to USDA's concerns that disclosing the Worksheets would help Lion to discover which of its documents, if any, are falsified.   The Worksheets will undoubtedly help Lion determine which of its own documents differ from those held by USDA.   By comparing its files to the withheld Worksheets, Lion

20

1  could likely better structure its defense to avoid liability that
2  would inevitably stem from future accidental disclosure of
3  falsified documents.

4      The undisputed material facts and the USDA's affidavits meet
5  the government's burden to show that the law enforcement
6  exemption is met.  The disclosure of the Worksheets can
7  "reasonably be expected to interfere with enforcement
8  proceedings."  Accordingly, summary judgment in favor of USDA as
9  to this issue is GRANTED.

10     **C.   Lion's Motion for Summary Judgment**

11     For the reasons stated above, Lion's motion for summary
12 judgment is DENIED.

13     **ACCORDINGLY:**

14     1.  Defendant's motion for summary judgment is hereby
15 GRANTED and Plaintiff's motion for summary judgment is hereby
16 DENIED.

17     2.  JUDGMENT FOR DEFENDANT TO BE GRANTED.

18

19

20 IT IS SO ORDERED.

21 **Dated:  October 19, 2005**              **/s/ Robert E. Coyle**
22 810ha4                         UNITED STATES DISTRICT JUDGE

23

24

25

26

                              21